UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No. 8:19-cr-529-TPB-TGW

MARVIN "MJ" MITCHELL,

    Defendant.
_____/

## ORDER DENYING DEFENDANT MARVIN MITCHELL'S MOTION TO SUPPRESS

This matter is before the Court on "Defendant Marvin Mitchell's Motion to Suppress Evidence Seized as a Result of an Unlawful Search and Request for Evidentiary Hearing," filed by counsel on January 15, 2022. (Doc. 112). On February 4, 2022, the United States of America filed a response in opposition to the motion. (Doc. 120). On March 22, 2022, the Court held a hearing to address the motion. (Doc. 139). After reviewing the motion, response, evidence, testimony, court file, and the record, the Court finds as follows:

### Background

Defendant seeks to suppress all items found and observations made during the execution of a search warrant on June 17, 2019, in Room 130 of the Express Inn Motel. The facts are largely undisputed. As will be discussed below, undercover video surveillance done by law enforcement shows Defendant's involvement in a controlled drug transaction at the very location that is the subject of the search warrant at issue here. In April, May, and June 2019, law enforcement confidential

informants conducted several undercover controlled purchases of narcotics from Room 126 of the Express Inn. Defendant Marvin Mitchell and others were identified as distributors of the narcotics, and Defendant was present for some (but not all) of the drug transactions. During at least one of the transactions, Defendant met the confidential informant at Room 130, walked over to Room 126 for the transaction, and then returned to Room 130.

On June 1, 2019, law enforcement investigated an overdose death of L.F. During an interview, L.F.'s friend indicated that he had purchased narcotics from Express Inn Room 126 from an individual he knew as "Chris" – co-defendant Christopher Hughes. Although the friend typically purchased narcotics from Chris, he knew that he was buying Defendant's product.

Based on the undercover transactions and the overdose death, Detective Windy Vater of the Pinellas Park Police Department applied for two state search warrants, seeking to search two separate rooms – Room 126 and Room 130.[1] The search warrants were signed by a Florida Circuit Court judge in Pinellas County on June 1, 2019, and executed that same day.[2] A few days after the search, Detective Vater realized that the search warrants for Rooms 126 and 130 were identical, both

---

[1] Detective Vater also applied for a third search warrant to search Room 128, which was part of a separate investigation and not related to this case.

[2] After entering Room 126, officers detained co-defendant Hughes and a second co-conspirator. Along with other items, officers seized approximately 34 tin foil bundles of fentanyl – estimated to total 9.4 grams. After entering Room 130, officers detained Defendant. In Room 130, officers found one tin foil bundle (identical to the bundles found in Room 126 and those found next to L.F. following her fatal overdose), currency, insulin syringes, and an electronic scale.

seeking permission to search Room 126. Although the affidavit for Room 130 set out a basis to search that particular room, Detective Vater claims that she made a scrivener's error and wrote Room 126 rather than Room 130 on the search warrant itself, essentially obtaining two duplicate search warrants for Room 126.

## Analysis

### *Validity of Search Warrant*

Under the Fourth Amendment, all persons have the right "to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has generally interpreted this to mean that a search must be based on probable cause and must be executed pursuant to a warrant. *Katz v. United States*, 389 U.S. 347, 356-57 (1967). While some circumstances may allow searches and seizures without a warrant, the Fourth Amendment favors the use of warrants. *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (noting "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant").

In the motion, Defendant argues that the evidence against him should be suppressed because law enforcement officers failed to obtain a warrant for Room 130. The Government asserts that Detective Vater made a scrivener's error and wrote Room 126 instead of Room 130 on the search warrant.

A search warrant is not necessarily invalid because it contains an error in the address. *See*, *e.g.*, *United Stats v. Harbison*, 523 F. App'x 569, 572 (11th Cir. 2013); *United States v. Graham*, 476 F. App'x 839, 841 (11th Cir. 2012); *United States v.*

*Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986); *United States v. Weinstein*, 762 F.2d 1522, 1532-33 (11th Cir. 1985). "The Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may with reasonable effort ascertain and identify the place intended." *Weinstein*, 762 F.2d at 1532. Consequently, even if a warrant contains a scrivener's error as to the address, the warrant may still be upheld as valid if the physical description is sufficiently particular and if law enforcement possessed knowledge and was familiar with the property.

In this case, the search warrant contained a physical description of the hotel.[3] Importantly, the affidavit also demonstrates law enforcement's familiarity with the property, including Room 130. At the suppression hearing, the Court heard credible testimony from Detective Vater concerning the scrivener's error in the warrant and her personal knowledge of the property. The executing officers' personal knowledge cures any ambiguity in the search warrant. As such, the motion to suppress is denied as to this ground.

## *Probable Cause*

Defendant further argues that even if a warrant existed, there was not sufficient probable cause to support the warrant. As the Supreme Court has explained, when issuing a search warrant, "the task of the . . . magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set

---

[3] The Court notes that the warrant incorporated the affidavit's definition of the premises, which listed Room 130, and that defects in the warrant description may be cured by attachment and incorporation of affidavits. *See, e.g.*, *Weinstein*, 762 F.2d at 1531; *United States v. Beckett*, 369 F. App'x 52, 57 (11th Cir. 2010).

forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Furthermore, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* (internal quotation omitted). Consequently, "[a] magistrate's determination of probable cause should be paid great deference by reviewing courts." *Id.* at 236 (internal quotation omitted). Moreover, a reviewing court should not invalidate a search warrant by interpreting affidavits "in a hypertechnical, rather than a commonsense, manner." *Id.*

Reviewing the warrant and supporting affidavit – and giving due deference to the determination of the magistrate judge – the Court finds that there was sufficient probable cause to support the issuance of the search warrant based on extensive undercover surveillance and statements from confidential informants. Among other things, video surveillance of Defendant – which the Court reviewed during the suppression hearing – showed Defendant's involvement in a controlled drug transaction. The affidavits in this case sufficiently explain the criminal activity and link that activity to Rooms 126 and 130. The motion is denied as to this ground.

### *Good Faith Exception*

Even if the Court found issues with the warrant for Room 130, the seized evidence would still be admitted if the officers reasonably relied in objective good faith on a subsequently invalidated warrant that was issued by a detached and

neutral magistrate. *See, e.g., United States v. Leon*, 468 U.S. 897, 914-26 (1984). In this case, a state court judge authorized a search warrant, which law enforcement officers relied upon in good faith. The warrant did not lack probable cause, and it was not so facially deficient that the executing officers could not reasonably presume that the warrant was valid. Under the good faith exception, which is applicable here, the evidence should not be excluded. Accordingly, "Defendant Marvin Mitchell's Motion to Suppress Evidence Seized as a Result of an Unlawful Search and Request for Evidentiary Hearing" (Doc. 112) is hereby **DENIED**.

    **DONE and ORDERED** in Chambers, in Tampa, Florida, this <u>28th</u> day of March, 2022.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**